291 S.E.2d 673

**UNITED MINE WORKERS OF AMER-ICA, International Union, and David E. Ward**

v.

**Walter MILLER, Director, West Virginia Department of Mines, and James R. Walker.**

**No. 15493.**

Supreme Court of Appeals of West Virginia.

March 30, 1982.

Rehearing Denied May 27, 1982.

Daniel F. Hedges, Charleston, for petitioners.

Chauncey H. Browning, Atty. Gen., Nicholas W. Johnson, Deputy Atty. Gen., B. Keith Huffman and Bruce Ray Walker, Asst. Attys. Gen., Charleston, for respondents.

Jackson, Kelly, Holt & O'Farrell and Charles Q. Gage, Charleston, for amicus curiae Amherst Coal Co., Armco, Inc., Belva Coal Co., Inc., Cannelton Industries, Inc., Carbon Fuel Co., Cedar Coal Co., Central Appalachian Coal Co., Consol. Coal Co., Eastern Assoc. Coal Corp., Elkay Mining Co., Imperial Colliery Co., Kitt Energy Corp., Long Branch Energy, Milburn Colliery Co., Monterey Coal Co., New River Co., Old Ben Coal Co., Powellton Co., Robinson-Phillips Coal Co., Royal Coal Co., Slab Fork Coal Co., Southern Appalachian Coal Co., U. S. Steel Min. Co., Inc., Valley Camp

Coal Co., Va. Crews Coal Co., Westmoreland Coal Co. and C. N. Wilcher Min., Inc.

McGRAW, Justice:

This is an original proceeding in mandamus. The petitioners are the United Mine Workers of America (UMWA), a voluntary association and international union representing mine workers throughout West Virginia, and David E. Ward, an authorized representative of miners employed at the Harewood mine in Fayette County, operated by Armco, Incorporated. Petitioner Ward is also a safety committeeman and president of local 7113 of the UMWA. The respondents are Walter Miller, Director of the West Virginia Department of Mines, and James K. Walker, an inspector for the West Virginia Department of Mines.

On or about February 11, 1982, respondent Walker conducted a general inspection of the Harewood mine. Accompanying the respondent during the inspection were two Armco management employees and petitioner Ward. The inspection lasted approximately eight hours, from eight in the morning until four in the afternoon. During the course of the inspection petitioner Ward pointed out a number of conditions he considered violations of State mining laws. At the conclusion of the inspection respondent Walker issued ten notices of violations, and also issued a withdrawal order for a section of the mine that was found to pose an imminent danger.

Petitioner Ward, however, alleges that there were eighteen violations which he pointed out and which were observed by respondent Walker, for which the respondent inspector refused to issue notices, although the inspector did orally direct Armco to correct some of these violations. At one point during the inspection petitioner Ward complained to the inspector of the large amount of dust present in the air, noting that the dust was so thick "it was difficult to even see the buggy lights down the entry when they were running." The record shows that the inspector's response was, "It won't explode."

After the inspection was completed management personnel indicated that they were going to dock petitioner Ward's pay for the time he spent accompanying the inspector. The petitioner brought this to the attention of the inspector and asked if he would take any action in response to Armco's docking of his pay. The inspector replied that he would not. Consequently, petitioner Ward was docked one full day's pay by Armco.

Subsequently, the petitioners commenced proceedings in this Court. They contend that the Director of the Department of Mines has failed to perform his statutory duty to enforce the laws related to health and safety in coal mines in West Virginia. They seek a writ of mandamus ordering the respondents to (1) take the necessary action that will assure that the authorized representatives of miners are not penalized by their employers for exercising their statutory right to accompany department mine inspectors during coal mine examinations; (2) take such action as is necessary to assure enforcement of safety laws requiring that coal mines be free from excessive levels of respirable dust; and (3) require inspectors to note all violations of law found during the course of an inspection. We find merit in the petitioners' contentions and grant the writ.

I.

The threshold issue we must address in this proceeding is whether mandamus is an appropriate remedy for the relief sought by the petitioners. As a general rule "[b]efore this Court may properly issue a writ of mandamus three elements must coexist: (1) the existence of a clear right in the petitioner to the relief sought; (2) the existence of a legal duty on the part of the respondent to do the thing the petitioner seeks to compel; and (3) the absence of another adequate remedy at law." Syllabus Point 3, *Cooper v. Gwinn*, 171 W.Va. 245, 298 S.E.2d 781 (1981).

The respondents argue that mandamus is an inappropriate remedy here because the statutes do not establish a clear legal right on the part of the petitioners for the requested relief, nor a clear legal duty on the

part of the respondents to take the action they seek to compel. The respondents further contend that the petitioners possess other adequate remedies which preclude the issuance of the writ.

■ All of the claims of the petitioners are founded upon the alleged failure of the Director of the Department of Mines and department inspectors to enforce the West Virginia mine safety and health laws contained in Chapter 22 of the West Virginia Code. It is clear that the respondents have the duty to enforce these statutes. W.Va. Code § 22–1–4 (1981 Replacement Vol.) provides that "[t]he director of the department of mines ... *shall* have the power and duty to ... supervise and direct the execution and enforcement of the provisions of [Chapter 22]." (Emphasis added). "It is well established that the word 'shall' in the absence of language in the statute showing a contrary intent on the part of the Legislature, should be afforded a mandatory connotation." Syllabus Point 1, *Nelson v. Public Employees Ins. Board*, 171 W.Va. 445, 300 S.E.2d 86 (1982).

■ The crucial issue involved in each of the petitioners' claims is therefore whether the particular statutes upon which they rely provide for the performance of the acts they seek to compel. If the statutes do so provide, then it is clear from the provisions of W.Va. Code § 22–1–4 that the respondents have a non-discretionary duty to enforce those provisions. Mandamus lies to require the discharge by a public officer of a non-discretionary duty. *State ex rel. Bagley v. Blankenship*, 161 W.Va. 630, 246 S.E.2d 99 (1978). The petitioners, as members of the class which the provisions of Chapter 22 of the West Virginia Code were designed to protect, have a clear right to have these laws enforced for their benefit. *See Cooper v. Gwinn, supra.* Thus whether the petitioners have a clear right to the relief sought and whether the respondents have a clear duty to do the act the petitioners seek to compel, will necessarily depend upon the particular language of the statutes upon which the petitioners rely, which we will address below.

■ We do not agree that the petitioners have other adequate remedies through which they could assert their claims. None of the remedies suggested by the respondents are equally as beneficial, convenient and effective as the relief they seek in mandamus. "While it is true that mandamus is not available where another specific and adequate remedy exists, if such other remedy is not equally as beneficial, convenient, and effective, mandamus will lie." Syllabus Point 4, *Cooper v. Gwinn, supra.* Moreover, the trend in this Court has been to enlarge the scope of mandamus, especially where there is an urgent question of public policy or where there is no reason for delaying adjudication of the issue by the highest court of the State. *Walls v. Miller*, 162 W.Va. 563, 251 S.E.2d 491 (1978); *Smoleski v. County Court of Hancock County*, 153 W.Va. 307, 168 S.E.2d 521 (1969).

II.

■ It is not debatable that the Legislature has established a clear and unequivocal public policy that the Department of Mines shall have as its primary purpose "the protection of the safety and health of persons employed within or at the mines of this state." W.Va.Code § 22–1–2 (1981 Replacement Vol.). In furtherance of this purpose the Legislature has established mandatory safety and health standards which the Director of the Department of Mines has the duty to execute and enforce. *See* W.Va.Code §§ 22–1–4; 22–2–1 *et seq.* (1981 Replacement Vol.). The fundamental procedure for the enforcement of mine safety and health laws is inspection of individual mines by Department of Mines personnel, *see* W.Va.Code §§ 22–1–13, –14 (1981 Replacement Vol.), who have the duty to "fully and effectively carry out the provisions" of the mine health and safety laws. W.Va.Code § 22–1–4.

Under the provisions of W.Va.Code § 22–1–13, inspectors, as the authorized representatives of the Director, are required to make a thorough examination of the mines they inspect, and to note every violation of mining laws they find. In or-

der to facilitate this thorough inspection the statute provides that "the authorized representative of the miners at the mine at the time of such inspection *shall* be given an opportunity to accompany the [inspector] on such inspection." (Emphasis added).

Miner participation is essential to the integrity of the inspection process, for only those who work in the mine and are familiar with the day to day operations, are likely to have knowledge of the possible location of safety and health hazards. W.Va.Code § 22–1–13 further contemplates that the miner representative shall be "at the mine at the time of such inspection ...." Since no advance notice of inspections is permitted to be given, the miner representative will almost without exception be a miner employed to work at the mine. The West Virginia Wage Payment and Collection Act, W.Va.Code § 21–5–1 *et seq.* (1981 Replacement Vol.), clearly requires employers to pay wages to their employees for labor or services rendered. A miner who assists a State mine inspector in ascertaining health and safety hazards is rendering a service to his employer, for which he is entitled to be paid.

The protection of the safety and health of miners is a concern not only of the miners and the State but of the operator as well. The operator has a vested interest in seeing that his mine is run safely. Strict compliance with health and safety laws on the part of the operator promotes goodwill between employer and employee, fosters employee loyalty, and insures safe and efficient production. It permits the operator to attract and keep a permanent class of employee, prevents the interruption of production by the withdrawal orders and physical disasters which result from unsafe practices, and reduces the cost of workers' compensation, which reduced cost is in turn reflected in the market cost of coal, thereby making the operator more competitive. Needless to say, the State also has a vital interest in the health and safety of West Virginia miners. This interest goes beyond the normal concerns of government for the welfare of its citizens. It also encompasses the interest of the State in continued mineral production, and resultant additions to its tax base, as well as the State's interest in reducing the cost of government sponsored social welfare programs and health services necessary to provide for the victims of mine disasters. Thus the inspection of mines for violations of health and safety laws is contemplated to be a cooperative effort between the miner, the operator, and the State. A miner representative who accompanies a State inspector to point out health and safety hazards is furthering not only the all important interests of the miners he represents, but also those of the operator and of the State.

Miner participation in the inspection process is an integral component of the enforcement scheme contemplated by statute which benefits all interested parties while furthering the primary purpose of miner protection. However, the purpose of the statutes would be seriously compromised if the respondents permit operators to retaliate against miners who aid in the enforcement of the law. Such retaliation would clearly frustrate the inspection process, and the refusal of the respondents to take action against operators who retaliate against miners who exercise their statutory right to accompany inspectors is contrary to the public policy of this State.

 Such retaliation would further violate W.Va.Code § 22–1–21 (1981 Replacement Vol.) which explicitly provides that "[n]o person shall discharge *or in any other way discriminate against* or cause to be discharged or discriminated against any miner or any authorized representative of miners by reason of the fact that ... such miner or representative ... has notified the director, his authorized representative, or an operator, directly or indirectly, of any alleged violation or danger ...." (Emphasis added). Withholding compensation from an employee in retaliation for the exercise by the employee of his statutory right to accompany State mine inspectors for the purpose of pointing out health and safety hazards is a form of discrimination prohibited by W.Va.Code § 22–1–21. Miner representatives must not be required to forego compensation when they seek to aid

enforcement of laws which benefit not only the miner and the State, but the operator as well. When a charge of discrimination is brought to the attention of an inspector, the inspector has the duty to note the alleged discriminatory action and if such action is found to constitute a violation, to issue a notice or order as provided in W.Va. Code § 22–1–13. In addition the miner who is the subject of discrimination may also pursue the administrative remedies provided in W.Va.Code § 22–1–21.

 Thus under the provisions of W.Va.Code §§ 22–1–13 and 22–1–21 the authorized representative of the miners at the time of an inspection has a clear right to accompany State mine inspectors during an inspection, and to be free from discrimination for pointing out health and safety hazards to the inspector. The respondents have a mandatory duty to enforce these statutory provisions. W.Va.Code § 22–1–4. Since withholding pay from miners who exercise their statutory right to accompany State mine inspectors is a form of discrimination prohibited by statute, the respondent Director has a clear duty to remedy such discrimination.

The respondents argue that there are other available remedies through which the petitioners could assert their claim for compensation for time spent accompanying inspectors, and that therefore such relief is unavailable in a mandamus proceeding. These are (1) an action for declaratory judgment brought pursuant to W.Va.R. Civ.P. 57; (2) a private contract action brought under the terms of the National Bituminous Coal Wage Agreement of 1981; and (3) a civil action for retaliatory conduct on the part of the employer which violates public policy. *See Harless v. First Nat'l Bank of Fairmont,* 162 W.Va. 116, 246 S.E.2d 270 (1978). We do not agree that these are adequate remedies for the relief sought by the petitioners.

The first remedy suggested by the respondents is clearly inappropriate under the circumstances of this case. An action for declaratory judgment is a procedure by · which a person whose rights or duties are affected by a statute may obtain an inter-

pretation of the statute and a court declaration of his rights or duties under the terms of the statute. *See* W.Va.Code § 55–13–2 (1981 Replacement Vol.).

 The suggestion of an action for declaratory judgment is not well taken in this case because the relevant statutes involved in this proceeding clearly establish the rights of the petitioners to accompany mine inspectors, *see* W.Va.Code § 22–1–13, and to be free from employer discrimination. *See* W.Va.Code § 22–1–21. The duty of the respondents to execute and enforce these statutory mandates is equally clear, *see* W.Va.Code § 22–1–4, and therefore no judicial construction of the statutes is required. Where a statute is clear and unambiguous it should be applied and not construed or interpreted. *Walls v. Miller,* W.Va., 251 S.E.2d 491 (1978); *Carper v. Kanawha Banking & Trust Co.,* 157 W.Va. 477, 207 S.E.2d 897 (1974). Pursuance of this remedy by the petitioners would therefore be a futile act.

The other two remedies suggested by the respondents are simply irrelevant to the object of this litigation. The private causes of action suggested by the respondents are procedures by which individual employees could seek to recover damages from individual employers. The petitioners herein do not seek such relief. Rather they seek to compel West Virginia officials to perform their duty of enforcing West Virginia law in order to protect the health and safety of West Virginia miners.

Finally, the record does not support the respondents' contention that the petitioners failed to demand performance of the act they here seek to compel. Petitioner Ward requested respondent Walker to take action to prevent the docking of his pay, which request was refused. "As a general rule, the petitioner, before instituting a proceeding in mandamus, must demand performance of the act or duty which he seeks to enforce; but when it appears that a demand would be useless or unavailing it need not be made." Syllabus Point 3, *State ex rel. Horne v. Adams,* 154 W.Va. 269, 175 S.E.2d 193 (1970). The petitioners have fulfilled this requirement. Mine in-

spectors are authorized representatives of the Director of the Department of Mines, *see* W.Va.Code §§ 22–1–13, –14, and therefore a request or demand made to an inspector is a request or demand made to the Director. *See also* W.Va.Code § 2–2–5 (1979 Replacement Vol.).

### III.

The petitioners next request that the respondents be compelled to enforce the laws of this State requiring the control of respirable dust in coal mines. They base this request upon the provisions of W.Va.Code §§ 22–2–48 and 22–2–70d (1981 Replacement Vol.), and upon the respondents' duty under the provisions of W.Va.Code § 22–1–4 to enforce these statutes.

W.Va.Code § 22–2–48 provides, in pertinent part: "Dust *shall* be controlled by the use of permissible dust collectors or other approved methods." (Emphasis added). The mandate of this statute is clear that "[d]ust *shall* be controlled ...." It is also clear that the respondent Director, as chief executive officer of the Department of Mines, has a mandatory duty to execute and enforce the provisions of the statute. *See* W.Va.Code § 22–1–4.

Moreover, W.Va.Code § 22–2–48 also indicates the standards for respirable dust which the Director is required to enforce. The statute speaks of "permissible dust collectors." The term "permissible" is defined by W.Va.Code § 22–1–1(a)(9) (1981 Replacement Vol.) as "any equipment, device or explosive that has been approved as permissible by the United States bureau of mines and meets all the requirements, restrictions, exceptions, limitations and conditions attached to such classification by the bureau." The pertinent federal regulations indicate that permissible dust collectors must:

[Be] designed specifically to prevent dissemination of airborne dust generated by drilling into coal-mine rock strata in concentrations in excess of [10 million particles of 5 microns or less in diameter per cubic foot of air], and to confine or control the collected dust in such manner that it may be removed or disposed of

without dissemination into the mine atmosphere in quantities that would create unhygenic conditions.

30 C.F.R. § 33.4 (1981); *see also* 30 C.F.R. § 33.33 (1981).

Thus the Director has a duty to require operators to control dust at its source within these allowable limits.

W.Va.Code § 22–2–48 further contemplates the use of "other approved methods" of controlling dust. The term "approved" is defined by W.Va.Code § 22–1–1(a)(3) (1981 Replacement Vol.) to mean "in strict compliance with mining law, or, in the absence of law, accepted by a recognized standardizing body or organization whose approval is generally recognized as authoritative on the subject." The petitioners contend that in other areas of mining law where reference is made to "approved" methods, the Department of Mines has looked to federal standards for guidance. *See* W.Va.Code §§ 22–2–8(a); 22–2–13; 22–2–14; and 22–2–45 (1981 Replacement Vol.). The petitioners agree that standards promulgated under the Federal Coal Mine Health and Safety Act would fulfill the requirements of W.Va.Code § 22–2–48, and that adoption by the Director of the federal standards for control of respirable dust would be appropriate. *See* 30 U.S.C.A. § 842 (1971 and Cum.Supp.1981).

Consequently, we reject the respondent Director's contention that he has no authority or duty to promulgate or enforce standards for the control of respirable dust in West Virginia coal mines. W.Va.Code § 22–2–48 requires the Director to control respirable dust and directs him to the standards for control thereof.

We must also reject the respondent Director's contention that W.Va.Code § 22–2–70d vests sole authority for the promulgation of respirable dust standards in the Board of Coal Mine Health and Safety. W.Va.Code § 22–2–70d provides:

Each operator shall maintain the concentration of respirable dust in the mine atmosphere during each shift to which miners in active workings of such mine are exposed below such level as the board may establish. The board of the

department of mines may promulgate rules and regulations governing respirable dust, including, but not limited to dust standards, sampling procedures, sampling devices, equipment and sample analysis by using the data gathered by the federal bureau of mines.

Any operator found to be in violation of such standards shall bring itself into compliance with such standards and rules and regulations of the board or the director of mines may thereafter order such operator to discontinue such operation.

While it is true that this section permits the Board to adopt standards relating to respirable dust, those standards cannot be less than the approved industry standards contemplated by W.Va.Code § 22–2–48. This is clear from the provisions of W.Va.Code § 22–2A–4 (1981 Replacement Vol.) which provides:

"[The Board of Coal Mine Health and Safety] *shall* develop, promulgate and revise, as may be appropriate, rules and regulations as are necessary and proper to effectuate the purposes of article two [§ 22–2–1 *et seq.*] of this chapter and to prevent the circumvention and evasion thereof ... *[n]o rules or regulations promulgated by the board of mines shall reduce or compromise the level of safety or protection afforded miners below the level of safety or protection afforded by this chapter."* (Emphasis added).

Thus any regulations the Board promulgates may not reduce the level of protection afforded by W.Va.Code § 22–2–48, which mandates the minimum standards for respirable dust that the Department of Mines is required to enforce.

In this jurisdiction, we notice, it is not disputed by persons of reputable intellect that exposure to excessive levels of respirable dust constitutes the most serious health hazard which the modern coal miner experiences on a daily basis. The Legislature has recognized that respirable dust is the cause of occupational pneumoconiosis, a severe and debilitating disease. *See* W.Va. Code § 23–4–1 (1981 Replacement Vol.).

The purpose of W.Va.Code §§ 22–2–48 and 22–2–70d is to reduce, to the fullest extent possible, this serious health hazard. Control of respirable dust is a necessary ingredient of any plan which has as its objective the protection of the health and safety of coal miners. By enactment of these statutes the Legislature intended to provide a remedy for a severe occupational health hazard. The statutes contemplate that minimum standards for safe levels of respiratory dust exposure will be established, and that the standards will be fully and effectively enforced.

Although the Board has not yet promulgated standards for safe levels of respirable dust, that does not relieve the respondent Director of his duty to enforce the minimum standards contemplated by W.Va. Code § 22–2–48. The respondent Director has a clear statutory duty to execute and enforce the law enacted by the Legislature in order to protect the health and safety of miners. Indeed that is the prime reason for his existence. *See* W.Va.Code § 22–1–2, –4. The Director cannot justify his failure to perform his duty by pointing to the failure of the Board of Coal Mine Health and Safety, of which he is chairman, *see* W.Va.Code § 22–2A–3 (1981 Replacement Vol.), to perform its duty.

The record indicates that the Board has refused to promulgate regulations pursuant to W.Va.Code § 22–2–70d because it believes the federal program for regulating respirable dust administered by the Mining Safety and Health Administration is sufficient to protect the safety and health of West Virginia miners, and, remarkably and extraordinarily, the Board has unanimously approved a motion *to delete* W.Va.Code § 22–2–70d from the statutes the Department of Mines is required to enforce. *See* W.Va. Dept. of Mines, Board of Coal Mine Health and Safety, "Minutes of Meeting held November 15, 1979." This, of course, the Board has no authority to do. As a general rule the repeal of legislation is a function of the Legislature, not of an agency of the executive department. Therefore, W.Va.Code § 22–2–70d remains a statute the Department of Mines is requred to enforce, and in the absence of the pro-

mulgation of regulations by the Board of Coal Mine Health and Safety, the standards which must be enforced under the statute are those minimum standards for respirable dust contemplated by W.Va.Code § 22–2–48.

The petitioners and the respondent Director agree that the federal standards for respirable dust contained in the Coal Mine Health and Safety Act, *see* 30 U.S.C.A. § 842, are presently adequate with respect to the extent of control of respirable dust contemplated by W.Va.Code §§ 22–2–48 and 22–2–70d. Indeed, the respondent Director contends that any program he implements would duplicate the federal program and be a senseless expenditure of State funds. The petitioners refute this contention. Although they agree that the federal standards for respirable dust are adequate, they contend that the method by which those standards are enforced under the federal act does not further the purpose of protecting the health and safety of West Virginia coal miners.

We appreciate the petitioners' concerns. The federal program for enforcement of respirable dust standards precludes participation by those who are most interested in strict enforcement—the miners. Rather it places sole control of sampling and reporting procedures for respirable dust in the hands of coal operators. *See* 30 U.S.C.A. § 842. Our statutes, on the other hand, contemplate the participation of miners in the policing of all health and safety conditions. *See generally* W.Va.Code §§ 22–1–2; 22–1–12; 22–1–13; 22–1–21; 22–1–34a; and 22–2A–3 (1981 Replacement Vol.). Miners must be involved in the enforcement program to guarantee the integrity of the monitoring process and to insure that respirable dust standards are being met. Otherwise the purpose of our coal mine health and safety laws to protect the health and safety of coal miners could be frustrated.

Consequently, we hold that under the provisions of W.Va.Code §§ 22–1–2 and 22–1–4 the Director of the West Virginia Department of Mines has a mandatory duty to enforce the provisions of W.Va.

Code §§ 22–2–48 and 22–2–70d requiring the control of respirable dust. In determining standards for control of respirable dust the Director should look to applicable federal statutes and regulations which are generally recognized as authoritative on the subject. The procedure adopted by the Director for enforcement of these standards must include the participation of miners or their authorized representatives to insure the integrity of the monitoring process.

## IV.

Finally, the petitioners seek to compel the respondents to issue notices or orders for all violations of law found during mine inspections. Inspection of the relevant statutes indicates that the respondents clearly have this duty.

W.Va.Code § 22–1–13 provides that during an inspection of a mine "it *shall* be the duty of each inspector to note each violation he finds and issue a finding [,] order or notice, as appropriate for each violation noted." W.Va.Code § 22–1–14 provides that if an inspector "finds that an imminent danger exists, such representative ... *shall* issue forthwith an order requiring the operator of the mine or his agent to cause immediately all persons ... to be withdrawn ...." If the inspector "finds that there has been a violation of the law, but the violation has not created an imminent danger, he *shall* issue a notice to the operator or his agent ...." The statute further provides that "[n]otice and orders ... *shall* contain a detailed description of the conditions or practices which cause and constitute an imminent danger or a violation of any mandatory health or safety standard ...." and that "[e]ach notice or order ... *shall* be given promptly to the operator ... and all such notices and orders *shall* be in writing and *shall* be signed by [the inspector] and posted on the bulletin board at the mine." (Emphasis added).

Thus the statutes explicitly provide that an inspector who finds a violation during the course of an inspection has a nondiscretionary duty to issue a notice or order, which is in writing and signed by the

inspector. The respondents do not dispute the existence of this duty, and affirm that it is the policy of the Department of Mines to cite every violation that comes to their attention. However, they argue that mandamus is an inappropriate remedy here because violations are not always clear-cut and well defined and department inspectors must be given a certain degree of freedom in determining whether a violation exists.

On the other hand, the petitioners herein assert that the failure of the respondent inspector to issue citations for the eighteen specific health and safety hazards pointed out to him constitutes arbitrary and capricious action that is contrary to law.* In a deposition taken pursuant to this proceeding petitioner Ward represents under oath that these specific violations existed, and notwithstanding the general denial of the respondents contained in the responsive pleading, there is no evidence of record which would lead us to conclude otherwise. The record here illustrates the problem inherent in the inspector's action, in that we have insufficient documentation to support the inspector's decision not to issue citations for the alleged violations pointed out by petitioner Ward. Without such documentation it is impossible to determine on appeal if the inspector's decision was arbitrary and capricious.

The statutes with which we are here concerned contemplate that all enforcement procedures initiated by the Director will be subject to review. W.Va.Code §§ 22–1–16 and 22–1–31 (1981 Replacement Vol.) establish a procedure whereby the issuance of orders and notices may be reviewed in order to guard against arbitrary and capricious methods of enforcement. One of the obvious purposes for the requirement in W.Va.Code § 22–1–13 that orders and notices be in writing is to facilitate this review.

█ This review of inspectors' actions is designed to remedy situations where the inspector acts in excess of his authority, or where the inspector has failed to act as required by law. As this case demonstrates, in order for such review to be meaningful it is necessary that there be a record indicating the reasons for the inspector's decision and finding not to issue an order or citation when a health or safety hazard is pointed out to him, as well as the reasons for his decision and finding to issue an order or citation when he finds a violation of law. Accordingly, we hold that if during the course of an inspection, the existence of a health or safety hazard is pointed out to an inspector, the inspector must make note thereof on the record, and thereafter make a finding whether or not a violation exists. If the inspector finds that no violation exists and declines to issue an order or citation, he must give his reasons in writing for not doing so. In this manner a record will exist so that meaningful re-

---

* The eighteen alleged violations for which the inspector refused to issue citations are: (1) combustible coal dust in main haulage entry, *see* W.Va.Code § 22–2–25 (1981 Replacement Vol.); (2) inadequate clearance along haulage roads, *see* W.Va.Code § 22–2–37(g) (1981 Replacement Vol.); (3) haulage road gobbed out, *see* W.Va. Code § 22–2–37(g) (1981 Replacement Vol.); (4) inadequate roof support in switch area, *see* W.Va.Code § 22–2–26 (1981 Replacement Vol.); (5) trolley wire not guarded, *see* W.Va.Code § 22–2–40(81)(A) (1981 Replacement Vol.); (6) combustible coal dust in supply tract area, *see* W.Va.Code § 22–2–25 (1981 Replacement Vol.); (7) inadequate fire protection at location of oil and grease storage, *see* W.Va.Code § 22–2–58(k) (1981 Replacement Vol.); (8) combustible dust at belthead power center, *see* W.Va.Code § 22–2–25 (1981 Replacement Vol.); (9) inadequate ventilation in working face in Number 5 entry, *see* W.Va.Code § 22–2–4(a) (1981 Replacement Vol.); (10) accumulation of spilled lubricants on continuous miner, *see* W.Va.Code § 22–2–49(b) (1981 Replacement Vol.); (11) inadequate roof support in Number 1 entry, *see* W.Va.Code § 22–2–26 (1981 Replacement Vol.); (12) no insulation mat at feeder, *see* W.Va.Code § 22–2–40(6) (1981 Replacement Vol.); (13) inadequate roof support around feeder and beltline, *see* W.Va.Code § 22–2–26 (1981 Replacement Vol.); (14) combustible coal dust along beltline, *see* W.Va.Code § 22–2–25; (15) circuit breaker on the section of the power center not marked for identification, *see* W.Va.Code § 22–2–40(75) (1981 Replacement Vol.); (16) junction box at the belthead openings without guards, *see* W.Va.Code § 22–2–40; (17) circuit breaker (nips) at hoist on the load track not marked for identification, *see* W.Va.Code § 22–2–40(75) (1981 Replacement Vol.); and (18) respirable dust in excessive quantities throughout the working section, beltline and return escapeways, *see* W.Va.Code § 22–2–48; W.Va.Code § 22–2–70d.

view of the inspector's decision can take place should the miner representative appeal that decision, or should the Director, doing his duty, review the decision to insure that all violations of the mine health and safety laws are being cited by the inspector.

For the foregoing reasons we grant the writ of mandamus compelling the respondents to (1) execute and enforce the provisions of W.Va.Code §§ 21–1–13 and 21–1–21 to the end that miners are not penalized by their employers for exercising their statutory right to accompany department mine inspectors during mine examinations; (2) establish and enforce forthwith standards through which the provisions of W.Va.Code §§ 22–2–48 and 22–2–70d may be enforced consistent with the purpose of protecting the health and safety of miners; and (3) require every mine inspector to make written notation of every alleged hazard to health and safety pointed out during the course of a mine inspection, to make a finding thereon, and if no order or notice is issued, to make written record of the reasons for not doing so.

Writ granted.