325 S.E.2d 123

Ernest CARPENTER, Jerry Moorehead, Jack Lemley, Richard McClure, Paul E. Swiger, John Bennett, Wayne Bennett, Gregory Riley and United Mine Workers of America, International Union, by Richard L. Trumka, International President, Cecil E. Roberts, International Vice President, and John J. Banovic, International Secretary-Treasurer

v.

Walter MILLER, Director of the West Virginia Department of Mines, Grant King, Inspector at Large and Benjamin Snyder, Chairman of the Board of Appeals.

No. 16228.

Supreme Court of Appeals of West Virginia.

Dec. 11, 1984.

Dissenting Opinion Jan. 8, 1985.

Daniel F. Hedges, James M. Haviland, McIntyre, Haviland & Jordan, Charleston, Michael H. Holland, Mary Lou Jordan, U.M.W.A., Washington, D.C., for appellants.

B. Keith Huffman, Asst. Atty. Gen., Charleston, for appellees.

McGRAW, Justice:

The primary issue presented in this original proceeding in mandamus is whether coal miners may have their pay docked for testifying at coal mine safety hearings under West Virginia Code § 22–1–21(a)(3), (1981 Replacement Vol.), which provides, in pertinent part, that "No person shall ... in any ... way discriminate against ... any miner ... by reason of the fact that he believes or knows that such miner ... has testified or is about to testify in any proceeding resulting from the administration or enforcement of the provisions of this law." A secondary issue concerns the payment of witness fees in mine safety proceedings under West Virginia Code § 22–1–4(10) (Supp.1984). Prior to our discussion of each of these respective issues, we will describe the circumstances which gave rise to this proceeding.

On March 10 and 24, 1983, petitioners John Bennett, Wayne Bennett, and Gregory Riley testified before the Coal Mine Safety Board of Appeals pursuant to subpoenas issued by the Chairman of the Coal Mine Safety Board of Appeals. The petitioners are coal miners employed by the Kitt Energy Corporation. At these hearings, four other employees of Kitt Energy

testified on behalf of the company. Each of the coal miners had their pay docked for their two days of testimony, each of the other employees who testified at these same hearings did not have their pay docked.

On February 14, 1984, petitioners Ernest Carpenter, Jerry Moorehead, Jack Lemley, and Richard McClure testified on behalf of petitioner Paul E. Swiger before the Coal Mine Safety Board of Appeals pursuant to subpoenas issued by the Chairman of the Coal Mine Safety Board of Appeals. The petitioners are coal miners employed by Consolidation Coal Company. At this hearing, a section boss employed by Consolidation Coal testified on behalf of the company. Although the petitioners presented their subpoenas to the payroll office of Consolidation Coal, each had his pay docked for their day of testimony, while the company representative who testified at this same hearing did not have his pay docked.

The petitioners employed by Kitt Energy filed a written complaint with the respondent Director of the Department of Mines on April 25, 1983, who forwarded it to the respondent Chairman of the Board of Appeals. The petitioners employed by Consolidation Coal protested to the respondent Inspector at Large for the Northern Division of the West Virginia Department of Mines. Finally, the petitioner United Mine Workers of America requested the respondent Director of the Department of Mines to eliminate this discriminatory practice. Despite these efforts, however, the respondents have failed to take any action.

Recently, in Syllabus Point 5 of *UMWA v. Miller*, 170 W.Va. at 177, 291 S.E.2d 673 (1982), this Court held that, "Withholding compensation from an employee in retaliation for the exercise by the employee of his statutory right to accompany State mine inspectors for the purpose of pointing out health and safety hazards is a form of discrimination prohibited by W.Va.Code § 22–1–21." As this Court stated in *UMWA v. Miller*, 170 W.Va. at 183, 291 S.E.2d at 678:

> The protection of the safety and health of miners is a concern not only of the

miners and the State but of the operator as well. The operator has a vested interest in seeing that his mine is run safely. Strict compliance with health and safety laws on the part of the operator promotes goodwill between employer and employee, fosters employee loyalty, and insures safe and efficient production. It permits the operator to attract and keep a permanent class of employee, prevents the interruption of production by the withdrawal orders and physical disasters which result from unsafe practices, and reduces the cost of workers' compensation, which reduced cost is in turn reflected in the market cost of coal, thereby making the operator more competitive. Needless to say, the State also has a vital interest in the health and safety of West Virginia miners. This interest goes beyond the normal concerns of government for the welfare of its citizens. It also encompasses the interest of the State in continued mineral production, and resultant additions to its tax base, as well as the State's interest in reducing the cost of government sponsored social welfare programs and health services necessary to provide for the victims of mine disasters. Thus the inspection of mines for violations of health and safety laws is contemplated to be a cooperative effort between the miner, the operator, and the State. A miner representative who accompanies a State inspector to point out health and safety hazards is furthering not only the all important interests of the miners he represents, but also those of the operator and of the State.

Miner participation in the inspection process is an integral component of the enforcement scheme contemplated by statute which benefits all interested parties while furthering the primary purpose of miner protection. However, the purpose of the statutes would be seriously compromised if the respondents permit operators to retaliate against miners who aid in the enforcement of the law. Such retaliation would clearly frustrate the inspection process, and the refusal of the respondents to take action against opera-

tors who retaliate against miners who exercise their statutory right to accompany inspectors is contrary to the public policy of this State.

Clearly, as integral as miner participation in the inspection process is, miner participation in hearings is even more vital. Legislative recognition of this fact is evidenced by the specific application of the antidiscrimination provision found in West Virginia Code § 22–1–21(a)(3) (1981 Replacement Vol.) to any coal miner who "has testified or is about to testify in any proceeding resulting from the administration of the provisions of this law."

■ Although acknowledging the indefensibility of discrimination in compensation based upon the nature of testimony given, the respondents contend that, the provisions of West Virginia Code § 29A–5–1(b) (1980 Replacement Vol.) of the West Virginia Administrative Procedure Act, which govern the payment of witness fees in administrative proceedings, should provide the sole source of compensation for all witnesses compelled to testify in proceedings before the Department of Mines. Contrary to the respondents' assertion, however, that "there are no specific provisions contained in W.Va.Code §§ 22–1 and 22–1 *et seq.*, relating to the payment of witnesses in administrative proceedings," West Virginia Code § 22–1–4(10) (Supp. 1984) specifically provides that:

> The director of the department of mines ... shall have the power and duty to:
>
> Call or subpoena witnesses ... relevant or material to any hearing, investigation or examination of any mine or well permitted by this chapter. Any witness so called or subpoenaed shall receive forty dollars per diem and shall receive mileage at the rate of fifteen cents for each mile actually traveled, which shall be paid out of the state treasury upon a requisition upon the state auditor, properly certified by such witness.

Therefore, the payment of witness fees in proceedings before the Department of Mines is controlled by West Virginia Code § 22–1–4(10) (Supp.1984), and not by the Administrative Procedure Act, West Virginia Code § 29A–5–1(b) (1980 Replacement Vol.).

■ Unlike under the Administrative Procedure Act, where witness fees related to subpoenas "issued at the instance of an interested party shall be paid by the party who asks that such subpoena ... be issued," West Virginia Code § 29A–5–1(b) (1980 Replacement Vol.), all subpoenas of any witness "relevant or material to any hearing, investigation or examination of any mine ... permitted by [Chapter 22 of the Code] shall be issued at the instance of the Director of the Department of Mines," and "[a]ny witness so ... subpoenaed ... shall be paid out of the state treasury upon a requisition upon the state auditor," under West Virginia Code § 22–1–4(10) (Supp. 1984). Furthermore, reading West Virginia Code § 22–1–4(10) (Supp.1984) *in pari materi* with West Virginia Code § 22–1–21(a)(3) (1981 Replacement Vol.), it is clear that the Legislature intended that miners receive no reduction in compensation due to absence from employment when testifying in proceedings before the Department of Mines even though they receive witness fees, which are ostensively applied to such items as meals and lodging, and actual travel expenses, to reimburse them for the costs associated with attending such proceedings.

■ Accordingly, we hold that withholding compensation from a miner who testifies at a proceeding under Chapter 22 of the Code is a form of discrimination prohibited under West Virginia Code § 22–1–21(a)(3) (1981 Replacement Vol.); that under West Virginia Code § 22–1–4(10) (Supp.1984), the Director of the Department of Mines has a mandatory duty to call or subpoena such witnesses as are relevant or material to any hearing, investigation or examination of any mine or well permitted by Chapter 22 of the Code; and that, under West Virginia Code § 22–1–4(10) (Supp.1984), the Auditor has a mandatory duty to requisition the state treasury for the payment of statutory witness fees and mileage upon certification by any witness called or subpoenaed by the

Director of the Department of Mines. Therefore, we grant a writ of mandamus compelling the respondents to (1) enforce the provisions of West Virginia Code § 22–1–21(a)(3) (1981 Replacement Vol.) to the end that miners are not penalized by their employers for appearing to testify at any proceeding conducted under Chapter 22 of the Code; (2) direct the Kitt Energy Corporation and the Consolidation Coal Company to fully compensate each of the petitioner miners whose pay was docked for the days on which testimony was given before the Department of Mines; and (3) further direct the Kitt Energy Corporation and the Consolidation Coal Company to reimburse the petitioners for all costs and expenses, including attorneys fees, as are determined to have been reasonably incurred by the petitioners in connection with the prosecution of this mandamus proceeding.*

Writ granted.

NEELY, Chief Justice, dissenting:

Although I am in sympathy with the majority's desire to protect miners who testify against their employers about mining conditions from discrimination, I must dissent because this Court, in its opinion today, has misread and incorrectly applied the relevant statutes.

Two statutes are relevant to a disposition of this case. The first, *W. Va. Code* 22–1–21 [1977], prevents discrimination against miners or their representatives who contact or cooperate with the Department of Mines in an investigation or hearing. Subsection (c) of *W. Va. Code* 22–1–21 [1977] awards all costs and expenses, inclusive of attorney's fees, to a miner who successfully proves a case of employer discrimination.

The second statute, *W. Va. Code* 22–1–4(10) [1984] must be read *in pari materia* with *W. Va. Code* 22–1–21 [1977]. *W. Va. Code* 22–1–4(10) [1984] gives the Director of the Department of Mines the "power and duty" to call or subpoena all witnesses material to the case and to reimburse them out of the state treasury. Obviously such a reimbursement is a cost of litigation and thus it is obvious such costs are only awarded where the complainant has prevailed against his employer. It is doubtful that the legislature intended that the Director of Mines has *carte blanche* to require employers to bring in potential witnesses from all four corners of the globe where the complainant does not prevail and it certainly is not, contrary to the majority's assertion, a "mandatory duty."

---

* This part of our mandate is made pursuant to West Virginia Code § 22–1–21(c) (1981 Replacement Vol.), which provides:

  Whenever an order is issued under this section, at the request of the applicant, a sum equal to the aggregate amount of all costs and expenses including the attorney's fees as determined by the board to have been reasonably incurred by the applicant for, or in connection with, the institution and prosecution of such proceedings, shall be assessed against the person committing such violation.