407 S.E.2d 392

**Franklin Clay COFFMAN, Petitioner Below, Appellant,**

v.

**U.S. STEEL MINING COMPANY, INC., and the Coal Mine Safety Board of Appeals in the State of West Virginia, Respondent Below, Appellee.**

**No. 19512.**

Supreme Court of Appeals of West Virginia.

Submitted May 15, 1991.

Decided July 9, 1991.

Dissenting Opinion of Justice Neely July 10, 1991.

Roger D. Forman, Charleston, for appellant.

William E. Robinson, Charleston, for appellee U.S. Steel Min.

Mario Palumbo, Atty. Gen., Robert Pollitt, Asst. Atty. Gen., for appellee State of W. Va.

WORKMAN, Justice:

This is an appeal by Franklin Clay Coffman from an August 28, 1989, decision of the Circuit Court of Kanawha County affirming a prior decision of the Coal Mine Safety Board. The lower court held that the Coal Mine Safety Board was not clearly wrong in its determination that the appellant had not been discriminated against within the meaning of W.Va.Code § 22A–1A–20 (1985).[1] We agree with the appellant's contention that discrimination was clearly proven, and we therefore reverse the decision of the Circuit Court of Kanawha County.

---

**1.** West Virginia Code § 22A–1A–20(a), in pertinent part, provides as follows:

No person shall discharge or in any other way discriminate against ... any miner ... by reason of the fact that he believes or knows that such miner ... (1) has notified the commissioner, his authorized representative, or an operator, directly or indirectly, of any alleged violation or danger, (2) has filed, instituted or caused to be filed or instituted any proceeding under this law....

## I.

On December 11, 1985, the appellant, a coal miner, noticed that there was no water on a conveyer belt at the coal mine in which he was working.[2] The appellant served as president of the United Mine Workers Local Union Number 2236, was a member of the Mine Safety and Health Committee, and was aware that the absence of water on the belt created a dust safety hazard. The appellant initiated a first-step verbal safety grievance by alerting foreman Donald Cook to the problem. According to the uncontroverted testimony of the appellant, Mr. Cook indicated that the appellant could have resolved the situation by simply requesting someone to turn the water on rather than initiating a first-step safety grievance. Mr. Cook then embarked upon a loud barrage of cursing, coarse language, and verbal abuse that could accurately be characterized as a tirade. Mr. Cook continued his profanity for a significant period of time in the presence of other mine workers. According to the appellant, Mr. Cook also informed him that if he wanted water on that "__ing belt," he'd have water up to his "__ing __" when he returned to work the next day. The appellant interpreted that remark as a threat to flood the area with enough water to create an electrical hazard. Thus, the appellant alleged not only discrimination in the form of verbal abuse, but also in the form of threats to the workers' physical safety. The appellant filed a safety discrimination complaint pursuant to W.Va.Code § 22A–1A–20 alleging that he had been discriminated against for filing a first-step grievance with Mr. Cook.

Subsequent to hearings before the Coal Mine Safety Board (hereinafter referred to as "the Board") on June 10, 1986, and August 5, 1986, the Board found no discrimination within the meaning of W.Va. Code § 22A–1A–20. Upon independent review of the record, the Circuit Court of Kanawha County concluded that the Board was not clearly wrong and affirmed its finding of no discrimination. The appellant appealed that decision to this Court.

## II.

West Virginia Code § 22A–1A–20 prohibits discrimination against a miner for notifying an operator of an alleged safety violation. That statute does not, however, explicitly define the term "discrimination." In interpreting the anti-discrimination statute, we have previously held that an employer may not withhold compensation from an employee in retaliation for the employee's exercise of his statutory right to accompany mine inspectors throughout the mine. Syl. Pt. 5, *United Mine Workers of America v. Miller*, 170 W.Va. 177, 291 S.E.2d 673 (1982). We have also interpreted the statute to disallow reduction in compensation due to absence from employment while testifying in proceedings before the Department of Mines. *See* Syl. Pt. 1, *Carpenter v. Miller*, 174 W.Va. 333, 325 S.E.2d 123 (1984). We also addressed 22A–1A–20 in *Wiggins v. Eastern Assoc. Coal Corp.*, 178 W.Va. 63, 357 S.E.2d 745 (1987) and held that the employer had acted improperly in reprimanding, transferring, and ultimately terminating a miner who initiated a safety grievance.

In the present case, the appellant introduced expert testimony[3] to establish that the cursing of a safety committee member such as the appellant, especially in the presence of other miners, and the general abusive nature of Mr. Cook's response could have a "chilling effect" upon other miners considering the filing of safety grievances and could intimidate miners from making such safety complaints. The appellee contends that such language is normal in the coal mine setting and that Mr. Cook was known for his loud voice and colorful language. The appellee further contends that Mr. Cook did not physically harm the appellant, that the appellant was not deprived of any increment of wages

2. Water is sprayed on conveyer belts in an attempt to reduce the level of coal dust in the air.

3. The appellant introduced William "Bolts" Willis, an International Health and Safety representative for the United Mine Workers of America, as an expert witness. Mr. Willis had held that position for approximately six years and had extensive experience in handling safety issues, discrimination cases, grievances, and technical training on mine fires and disasters throughout the United States.

due to the incident, and that the appellant's employment status remained unaffected.

While our previous cases concerning the anti-discrimination statute have dealt primarily with scenarios in which the miner has been discharged or subjected to wage withholding, we have not established any precise parameters within which an act of discrimination is encompassed. In determining whether a particular act constitutes discrimination within the meaning of W.Va. Code § 22A–1A–20, the object of the legislation must be considered. The anti-discrimination statute is clearly designed to protect the interests of miners alleging safety violations and to prevent discrimination against such miners for engaging in practices intended to abate safety violations. Furthermore, "[t]he Legislature has established a clear and unequivocal public policy that the Department of Mines shall have as its primary purpose 'the protection of safety and health of persons employed within or at the mines of the state.' W.Va. Code § 22–1–2 (1981 Replacement Vol.)." Syl. Pt. 4, *Miller*, 170 W.Va. at 18, 291 S.E.2d at 675. We have also recognized that "[t]he primary purpose of the penalties imposed under the antidiscrimination provisions of the mine safety acts is to ensure the reporting of safety violations...." Syl. Pt. 4, in part, *Wiggins*, 178 W.Va. at 64, 357 S.E.2d at 746. A conclusion regarding whether specific language or action tends to deter or discourage the reporting of safety violations is necessarily a subjective determination to be based upon the particular facts and circumstances existing within each individual case.

We believe that the protection of the rights of individual miners to initiate safety grievances without fear of repercussions is an important goal of the statute. Consistent with that proposition, we hold that aggravated verbal abuse in response to or based upon an employee's initiation of a safety grievance constitutes discrimination within the meaning of W.Va.Code § 22A–1A–20. Verbal abuse shall be deemed aggravated and thus sufficient to constitute discrimination when it is of such a nature as to create a chilling effect on miners contemplating the filing of safety grievances or such as would discourage miners considering the filing of a safety complaint. We believe that the lower court was clearly wrong in failing to find discrimination, and we consequently reverse the decision of the Circuit Court of Kanawha County and remand this matter to the lower court for a determination of appropriate sanctions. While many of the sanctions specified by W.Va.Code § 22A–1A–20 deal with rehiring, backpay, and other compensation issues not relevant to the present case, sanctions to be established by the lower court upon remand should include an order requiring affirmative action to abate such violations and an award of attorney's fees, costs, and expenses as reasonably incurred by the appellant in the prosecution of this proceeding.

Reversed and remanded.

NEELY, Justice, dissenting:

No person who ever spent as little as ten days in the United States Army could conclude that the Coal Mine Safety Board and Circuit Court were clearly wrong. The majority's assertion that the miner in this case seriously understood the foreman's comments as a threat to flood the mine and create an electrical hazard can be only high irony. The Chambers that wrote this opinion obviously read Milton's *Paradise Lost* when they should be watching HBO.